UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**LORI M o/b/o LISA M.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:23-cv-00404 TK

OPINION AND ORDER

## OPINION AND ORDER

    This case is before the Court to consider a final decision of the Commissioner of Social Security which partially denied Plaintiff's decedent's application for social security disability benefits. That final decision was issued by the Appeals Council on March 2, 2023. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 8) and the Commissioner filed a similar motion (Doc. 9). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four**.**

### I.  BACKGROUND

    Plaintiff's decedent (to whom the Court will refer to as "claimant") protectively applied for social security disability benefits on August 20, 2017, alleging that she became disabled on January 25, 2017. After initial administrative denials of her claim, claimant appeared at a hearing before an Administrative Law Judge on June 26, 2019. The ALJ issued an unfavorable decision on September 27, 2019. The Appeals Council subsequently granted review and, in an order issued on September 9, 2020, remanded the case for a supplemental hearing.

    The ALJ held that supplemental hearing, and a second supplemental hearing, on June 10 and June 30, 2021. The ALJ then issued a partially unfavorable decision on September 28, 2021, concluding that claimant became disabled on July 22, 2020 (the date she turned 50) but not before. In that decision, the ALJ found, first, that claimant met the insured status requirements of the Social Security Act through December 31, 2021, and that she had not engaged in substantial gainful activity between since her alleged onset date. Next, the ALJ determined that Plaintiff suffered from severe impairments including degenerative disc disease of the cervical and lumbar spine, rheumatoid arthritis, fibromyalgia, hip bursitis, depressive disorder, and anxiety disorder. The ALJ further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that prior to July 22, 2020, claimant had the ability to perform a limited range of sedentary work, concluding that she could occasionally lift, carry, and push ten pounds occasionally and five pounds frequently. Additionally, she could not use hand controls and could occasionally climb stairs and ramps and balance, stoop, kneel, and crouch, but she could never crawl or climb ladders, ropes or scaffolds. She could frequently reach in any direction but overhead and could frequently handle and finger objects bilaterally. She was not able to be exposed to excessive heat, cold, moisture, or humidity, or to vibrations or hazards such as unprotected heights and moving machinery. Lastly, claimant was limited to simple routine tasks which could be learned after a short demonstration or within thirty days, and she needed to have work which allowed her to be off task for 5% of the time in addition to regularly scheduled work breaks.

Claimant had past relevant work as dental hygienist. The ALJ determined that she was not able to do that job in light of being limited to sedentary unskilled work. However, based on the testimony of the vocational expert, the ALJ concluded that claimant could, prior to July 22, 2020, do unskilled sedentary jobs like food and beverage order clerk, document preparer, and lens inserter, and that those jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act prior to July 22, 2020.

In her motion for judgment on the pleadings, Plaintiff contends that the ALJ's decision is not supported by substantial evidence, making these three arguments:

> 1. The ALJ's RFC contained very specific limitations which were not supported by the record evidence, but instead based upon the ALJ's (a layperson's) interpretation of medical findings, including finding Plaintiff would be off-task exactly 5% of a regular workday in addition to normal breaks.
>
> 2. The ALJ failed to follow the regulations in evaluating the medical opinion evidence of record.
>
> 3. The ALJ failed to satisfy the limited burden of the Commissioner at step 5 of the sequential evaluation by failing to identify jobs in significant numbers in the economy Plaintiff would be able to perform with the restrictions identified in the RFC.

Plaintiff's memorandum, Doc. 8-1, at 20, 25, 30 .

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Claimant, who was 48 years old at the time of the first administrative hearing, first testified that she had an associates' degree and that she was living with her sister. She worked as

a dental hygienist but stopped working in 2017 due to a flare-up of rheumatoid arthritis and fibromyalgia. She had been experiencing symptoms from those conditions for two years. Claimant had tried different medications for her condition and was unable to tolerate some of them, and they did not really control her symptoms. She had daily swelling in her hands, feet, hips, and knees which varied in intensity, and she always experienced tenderness.

When asked about fatigue, claimant said that she experienced it continuously and that she would nap or lie down daily. However, she was able to take a trip to Africa with the help of prednisone. Claimant testified that she got trigger point injections every three to four weeks . She reported decreased grip strength in both hands. Claimant had undergone physical therapy for her neck, and also said she had help with grocery shopping. She did not believe she could work due to the problems with her hands and because she would not be able to elevate her feet or to lie down every day.

At the second hearing, held two years later, claimant testified that her condition went up and down since she last testified and that there were multiple drugs that she could not tolerate. She experienced pain every morning which could last up to an hour. She was still lying down on a daily basis. Claimant could drive but with some difficulty. She had also been diagnosed with bursitis in her hip which had been treated with injections. Standing and walking for a prolonged period would cause her feet and ankles to swell, and she did not believe she could lift and carry 20 pounds for up to a third of the day.

A medical expert, Dr. Dhiman, also testified at that hearing. He identified claimant's impairments as rheumatoid arthritis, high blood pressure, and hyperlipidemia, as well as osteoarthritis of the weight-bearing joints. He noted that there was evidence of a mental impairment but he could not express an opinion about it. Dr. Dhiman believed that claimant's physical impairments caused significant limitations, however. He concluded that claimant could lift and carry 20 pounds occasionally and 10 pounds frequently and that she could sit, stand, and walk for six hours each, with the latter two activities being done in one-hour increments. He also identified various postural limitations, thought that she could reach overhead occasionally and in all other directions frequently, and said that she could handle and finger frequently as well. Finally, he described various environmental limitations. On cross-examination, he agreed that limiting sitting to three hours at a time seemed reasonable, but he did not think that lying down during the day would be necessary. He said there was evidence of fatigue in the record but could not state definitively what was causing it. Lastly, he testified that Plaintiff would be off task for 5% of the workday.

An additional hearing was held in 2021 at which a vocational expert, Dr. Dennison, testified. He was asked questions about a person who could lift and carry ten pounds occasionally and five pounds frequently, who could sit for six hours and stand or walk for up to two hours, and who had the other physical limitations described by Dr. Dhiman. The person also was limited to simple, routine tasks that could be learned quickly. Dr. Dennison said that the person could not do claimant's past work as a dental hygienist but could perform jobs like food and beverage order clerk, document preparer, and lens inserter. He also gave numbers for those

jobs as they existed in the national economy. He further said those jobs did not require the use of hand controls or any overhead reaching, but if the person were off task 20% of the day or would miss two days per month, no work would be available. Being off task for 5% of the day would be tolerated, though.

### B. Medical Evidence

The medical evidence is accurately recited in Plaintiff's memorandum, and the Court will provide only a brief summary here since it is the ALJ's treatment of opinion evidence, as well as the vocational testimony, which is at issue.

The treatment records show that claimant reported worsening joint pain as early as 2016 while she was still working as a dental hygienist. She was also experiencing fatigue. Her doctor diagnosed her with rheumatoid arthritis, and she was subsequently seen by a rheumatologist. She continued to experience pain in her hands, feet, and knees throughout that year as well as morning stiffness. In early 2017, she was placed on short-term disability, and she also began to see her treating rheumatologist, Dr. Pone. Dr. Pone's notes show that claimant was tried on a number of different medications over time but that she was still having hand pain with activity. Claimant was showing tender points on examination and her medical assessment was expanded to include osteopenia and fibromyalgia.

In 2018, claimant's reported symptoms were similar, except that she also complained of hip pain and was given injections for that problem. She also received trigger point injections from Dr. Pone. By 2019, with a new medication, claimant reported significant improvement in her joint pain, but she was still fatigued. Later in the year, she said that she was not doing well, and she continued to have tenderness and swelling of her hands, finger joints, and wrists as well as in her feet, ankles, and knees.

### C. Opinion Evidence

On October 13, 2017, claimant was examined consultatively by Dr. Ippolito, a psychologist. At that time, she was taking medication for anxiety and depression. She said she had difficulty falling asleep and that she had some mild anxiety. Her attention, concentration, and memory were intact. Dr. Ippolito believed that claimant could perform most work-related functions without limitation, but she had a moderate limitation in her ability to regulate emotions, control behavior, and maintain well-being. (Tr. 724-28).

On July 16, 2019, claimant saw Dr. Rosenberg for an internal medicine examination. She reported a history of rheumatoid arthritis and fibromyalgia as well as fatigue. Her symptoms were worsened by prolonged standing, walking, and sitting. Claimant told Dr. Rosenberg that she was able to cook, clean, shop, and do laundry as well as shower, bathe, and dress herself. On examination, she had decreased range of motion in her cervical and lumbar spine and she demonstrated pain on the movement of her hip, wrists, hands, and ankles. Two of eighteen trigger points were positive for tenderness. However, her hand and finger dexterity were intact.

Dr. Rosenberg identified a number of minimal to mild restrictions in performing prolonged physical activities including walking, standing, and uninterrupted use of her hands and feet. (Tr. 850-54).

A physical therapist, Joseph Higgins, performed a physical capacity evaluation on claimant on October 31, 2019. He noted some limitations in the range of motion of various joints as well as below-normal grip strength, and he observed that she had diminished tolerance for sitting, walking, and standing, stating that "[h]er overall tolerances were diminished with inability to sustain functional posture in fixed positions of standing, sitting for full competitive work." He thought she could work no longer than three to four hours per day doing light sedentary activity with the need to change positions frequently. (Tr. 861-69).

Dr. Pone, the treating rheumatologist, wrote a letter on September 3, 2019, noting that claimant's rheumatoid arthritis affected mainly her hands and feet and that it "makes it difficult to use her hands or stand for prolonged periods of time." (Tr. 873). She also completed an off-task and absenteeism questionnaire on July 6, 2021, indicating that claimant had limitations on prolonged sitting and standing and that she would be off-task more than 25% of the time, although she cautioned that this factor was dependent on the type of job, and that when claimant was working as a dental hygienist, it was more than 25%. (Tr. 48). Before that, in June of 2019, Dr. Pone completed a functional capacity assessment, stating that claimant could only lift five pounds on an occasional basis, could stand and walk for less than two hours per day, needed to alternate positions, had to elevate her feet, had limitations in the use of her arms for pushing and pulling, and needed to lie down or recline for two hours in an eight-hour period. (Tr. 849).

Two state agency reviewers were asked their opinions as to claimant's functional limitations. Dr. Poss concluded that from a physical point of view, claimant retained the ability to do light work with fine motor manipulative restrictions. (Tr. 730-32). Dr. Bruni does not appear to have expressed an opinion as to claimant's mental restrictions.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112

(quotation marks omitted). "It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Id*. (quotation marks omitted
and emphasis added). But it is still a very deferential standard of review—even
more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S.
150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence
standard means once an ALJ finds facts, we can reject those facts "only if a
reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29
F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);
*see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same
standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A.  Residual Functional Capacity Finding

The first assignment of error addresses the ALJ's residual capacity finding, and, more specifically, his determination that claimant would be off task for 5% of the workday.  Plaintiff argues that nothing in the record supports this determination and that the only evidence as to off-task behavior is Dr. Pone's opinion, coupled with the extensive documentation of claimant's fatigue.  Consequently, she asserts that this determination must have been based on the ALJ's lay interpretation of the raw medical data.  The Commissioner's responsive memorandum argues that the ALJ was entitled to consider the record as a whole in determining the extent to which claimant would be off-task, and that it was not error for the ALJ to make a determination that was more favorable to claimant than the medical evidence suggested.

There was testimony given by Dr. Dhiman on this issue.  He was specifically asked by claimant's counsel if he had an opinion "as to what percent of the day the claimant would be off task due to pain or other symptoms," and he responded with a "best estimate of "5 to 10% of the day...." (Tr. 82).  He then elaborated that this estimate was consistent with claimant's report of constant pain in her hands, feet, hips, and neck.  *Id*.  However, without mentioning this specific testimony, the ALJ concluded generally that Dr. Dhiman's opinion was unpersuasive, so it can credibly be argued that the ALJ did not rely on this particular question and answer in making his determination, although it seems unusual that his finding almost exactly tracked this portion of Dr. Dhiman's testimony.

The ALJ apparently based his decision on this issue on an assessment of Plaintiff's mental, rather than physical, functioning.  The consultative mental opinion from Dr. Ippolito did not impose any off-task restriction, and, in fact, concluded that claimant had no mental impairment that would affect her daily functioning.  The ALJ found that opinion "largely persuasive," Tr. 35, but he added the off-task limitation and some other mental limitations "based on the claimant's allegations and subjective symptoms as reported." *Id*.  He had previously stated that these limitations were imposed in order to "accommodate the claimant's

combined mental impairments and resultant limitations in functioning." (Tr. 34).

Although not apparently pertinent to this off-task limitation, the ALJ also said that he did not find the state agency reviewer's opinion as to physical limitations to be persuasive, concluding that the medical findings were inconsistent with the determination that claimant could do light work activity, but also rejecting, at least implicitly, Dr. Poss's views as to limitations in fingering and handling. However, he did find Dr. Rosenberg's conclusions to be persuasive, except that the ALJ "provided greater limitation based on consideration of the totality of the claimant's impairments." (Tr. 35). He went on to discuss Dr. Pone's opinions, discounting them due to inconsistencies with her own examination findings and because they were "belied by the treatment record and testimonial evidence discussed above." *Id*. Lastly, the ALJ did not find the physical therapist's opinion persuasive "because it appears to largely rely on the claimant's subjective complaints as well as Dr. Pone's assessment and not the clinician's own exam findings." *Id.* As Plaintiff points out, none of these other opinions with the exception of Dr. Pone's 2021 assessment express any view as to whether, or to what extent, claimant would be off-task during the workday, and Dr. Pone's comment appears to relate only to when claimant was working as a dental hygienist (and it appears to have been premised upon physical, rather than mental, impairments).

This Court has addressed the applicable legal principles here on multiple occasions. As Plaintiff notes, these precepts are well-stated in *Deanna K. v. Comm'r of Soc. Sec.*, 2023 WL 5443901, at *5 (W.D.N.Y. Aug. 24, 2023), where the Court said:

> The ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (*quoting Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). But an ALJ is "not a medical professional," and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id*. at 257 (*quoting Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)). An ALJ may not, therefore, substitute his own judgment for competent medical opinion, *see Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017), and an ALJ's RFC determination "without a medical advisor's assessment is not supported by substantial evidence," *Dennis v. Colvin*, 195 F. Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, "[a]n ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision." *Benman*, 350 F. Supp. 3d at 257 (*quoting Matta*, 508 F. App'x at 56) (internal quotation marks omitted). Moreover, "remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit." *Baker v. Berryhill*, No. 15-CV-943, 2018 WL 1173782, at *4 (W.D.N.Y. March 6, 2018).

Plaintiff has cited to numerous decisions from this Court which hold that when an ALJ

determines that a claimant will be off-task for a specific percentage of time in the absence of a medical opinion containing such a limitation, the ALJ must, at a minimum, explain how the evidence supports that conclusion. Plaintiff is correct in her reading of those decisions; it is clear that "[c]ase law from this District reflects that if an ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports such a limitation." *See Michelle A. v. Saul*, 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020); *see also, e.g., Bromm v. Comm'r of Soc. Sec.*, 2025 WL 446236, at *5 (E.D.N.Y. 2025). The latter case says, citing to *Michelle A.*, and in language applicable to this case,

> Here, there are no medical opinions, treatment records or other evidence in the record that state a specific amount of time Plaintiff would need to be off-task for during a workday. *Michelle A.*, 2020 WL 7223235 at *4. Where the ALJ fails to tether an off-task finding to such evidence, the ALJ's RFC finding is not based on substantial evidence. *See, e.g., id.; Austin v. Comm'r of Soc. Sec.*, No. 19-CV-638 (JLS), 2020 WL 5629030, at *7 (W.D.N.Y. Sept. 21, 2020).

*Bromm, supra*, at *9.

The ALJ's reference to "the claimant's allegations and subjective symptoms as reported" is not specific enough to support his finding without a further clarification of which allegations and symptoms demonstrated the need to be off-task to any extent, much less for exactly 5% of the workday. That is especially a problem here because the ALJ attributed the off-task limitation to mental impairments, whereas the claimant's testimony and the bulk of the medical evidence suggests that any off-task limitation stems from pain or other physical symptoms. This leads to the conclusion that the ALJ committed legal error in failing to provide an adequate explanation of how he arrived at this portion of the residual functional capacity finding. And the Court is not persuaded that this is one of those cases where the ALJ simply gave the claimant "the benefit of the doubt" by including a limitation that is not really supported by the evidence. Consequently, a remand on this issue is necessary.

### B. Additional Issues

Given that a remand is being ordered on issue one, it is not technically necessary to address the other two issues raised in Plaintiff's memorandum. Those issues concern, first, the way in which the ALJ applied the factors of supportability and consistency to the opinions of state agency reviewer Dr. Poss, treating source Dr. Pone, and physical therapist Joseph Higgins. The Commissioner responds to this argument by acknowledging that the ALJ's rationale for evaluating these opinions is not particularly explicit, but contending that the Court can still trace a pathway of reasoning from the summary of the medical evidence to the ALJ's ultimate conclusions. A remand will provide the ALJ with an opportunity to clarify exactly how he applied the required regulatory factors to each opinion.

Plaintiff also notes that there is a substantial conflict in the vocational testimony provided at the two administrative hearings, and also that there may be a conflict between the vocational

testimony and the Dictionary of Occupational Titles.  The Court tends to agree with the Commissioner that an ALJ may choose to rely upon the testimony of one vocational expert that is at odds with the testimony of another, but it would certainly be better practice, when such a clear contrast exists as it does in this case, for the ALJ to explain why the testimony of one expert is preferred over another.  Depending upon how the first issue raised in this case is resolved, it may also be necessary to take additional vocational testimony, but in any event it would be helpful if the ALJ provided more clarification on how the various items of vocational evidence can be harmonized.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 8), **DENIES** the Commissioner's motion (Doc. 9), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

/s/  Terence P.  Kemp
**United States Magistrate Judge**